## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

JAMES HARRISON                                                                    PLAINTIFF

v.                                                                    NO. 4:21-CV-63-BJB

DIAMOND PHARMACY SERVICES, ET AL.                                    DEFENDANTS

* * * * *

## MEMORANDUM OPINION & ORDER

Diamond Pharmacy Services provides medication to inmates incarcerated by the Kentucky Department of Corrections. Defendant's First Interrogatory Responses (DN 39–1) at 18. James Harrison, an inmate in the Department's custody, suffers from chronic obstructive pulmonary disease. *Id.* at 7. To treat his COPD, he uses a prescription inhaler. Harrison alleges that Diamond Pharmacy delayed refilling his prescription inhaler on numerous occasions between 2019 and 2021 and that these delays caused him "respiratory distress" and "other physical and psychological harm." Complaint (DN 1-1) at 2–3.

Representing himself, Harrison sued Diamond Pharmacy in state court, asserting claims of negligence, intentional infliction of emotional distress, and violations of various Kentucky criminal statutes.[1] Complaint at 3–5. Diamond Pharmacy removed to this Court, DN 1, and asked the Court to screen the complaint because it was filed by a prisoner acting pro se, DN 7 (citing 28 U.S.C. § 1915A). The Court granted that motion and dismissed all of Harrison's claims except negligence and intentional infliction of emotional distress. DN 19. Diamond Pharmacy has now moved for summary judgment on the remaining claims (DN 28), while Harrison has moved for partial summary judgment on liability (DNs 36, 39).

Diamond Pharmacy advances four arguments: (1) Harrison's claims are barred by the statute of limitations; (2) Kentucky law does not allow an intentional infliction of emotional distress claim to proceed alongside a standard negligence claim; (3) no expert testimony supports the negligence claim; and (4) Harrison failed to comply

---

[1] The Defendant and the Court have previously referred to Harrison as "formerly incarcerated." DN 28-1 at 1; DN 42 at 1. But, as Harrison's most recent filing indicates, he is still incarcerated. DN 43 at 4, 6. This mix-up seems to be because Harrison was incarcerated at the Green River Correctional Complex when he filed his complaint, DN 1-1 at 2, but now appears to be incarcerated at Eastern Kentucky Correctional Complex, DN 43 at 4.

1

with the Court's earlier scheduling orders.  Harrison, for his part, argues that because no genuine dispute exists regarding the denial of his refill requests, he is entitled to judgment as a matter of law on his claims for negligence and intentional infliction of emotional distress.  DN 39 at 4.  Diamond Pharmacy is correct—in part—while Harrison is not.

**Statute of Limitations.**  Kentucky has a one-year statute of limitations for personal-injury claims: "An action for an injury to the person of the plaintiff" "shall be commenced within one (1) year after the cause of action accrued." Ky. Rev. Stat. § 413.140(1)(a).  "[A] cause of action accrues on the date of the injury to the person[,] even [if] the extent of the injury is not known until later." *Hall v. Spencer County*, 583 F.3d 930, 933 (6th Cir. 2009).  Because Harrison asserts that Diamond Pharmacy caused him respiratory distress and other physical and psychological harm by failing to refill his inhaler, his claims are timely only if he sued Diamond Pharmacy within a year of his injuries' occurrence.

Harrison refers to several incidents between 2019 and 2021 in his complaint, which he filed on February 5, 2021.  The claim based on repeated refill refusals from January 2021, Complaint at 2–3, is plainly timely.  Harrison filed his complaint well within the one-year deadline.

But he also refers to earlier refusals to refill his medication in "early 2019" "and again [on] August 29, 2019." *Id.* at 3.  A negligence claim arising out of these incidents is barred by the statute of limitations because Harrison did not sue Diamond Pharmacy until 18 months after the incidents during and before August.[2]

Harrison's claim for intentional infliction of emotional distress is not barred by the statute of limitations.  "When the gist of the tort is claimed interference with the plaintiff's rights causing emotional distress," "the five-year statute of limitations applies." *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984) (applying what is now Ky. Rev. Stat. Ann. § 413.120(6)); *see also Childers v. Geile*, 367 S.W.3d 576, 579–82 (Ky. 2012) ("This Court [in *Craft*] found that … the five year statute of limitations applied to the tort" of intentional infliction of emotional distress.).  Harrison sued Diamond Pharmacy within five years of its alleged failures to refill his inhalers.

---

[2] In his motion for partial summary judgment, Harrison also asserts that Diamond Pharmacy did not refill his inhaler on three different occasions in 2020.  DN 39 at 2.  These allegations, however, are absent from his complaint.  To the extent Harrison attempts to assert a claim for negligence or intentional infliction of emotional distress arising out of these incidents, either would fail because he did not include any supporting allegations in his complaint. *E.g.*, *Kinsey v. Ohio*, No. 20-3315, 2021 WL 1100494, at *3 (6th Cir. Jan. 11, 2021) ("A plaintiff may not assert in response to a defendant's motion for summary judgment a claim that was not asserted in the plaintiff's complaint.") (citing *Tucker v. Union of Needletrades, Industrial, and Textile Employees,* 407 F.3d 784, 788 (6th Cir. 2005)).

**Intentional Infliction of Emotional Distress.** That is not to say Harrison's intentional-infliction-of-emotional-distress claim may proceed to trial. As Diamond Pharmacy rightfully notes, "he has not presented any evidence that Diamond Pharmacy acted intentionally and/or recklessly." Diamond Pharmacy's Motion for Summary Judgment at 12.

Under Kentucky law, the tort of intentional infliction of emotional distress covers only conduct undertaken "intentionally or recklessly … to cause emotional distress." *Childers*, 367 S.W.3d at 580 (emphasis omitted). In other words, "the conduct is *aimed* at causing emotional distress." *Id.* (emphasis added). "This occurs when the actor had the specific purpose of causing emotional distress … or intended a specific conduct and knew or should have known that it would cause *emotional distress rather than a personal (physical) injury*[.]" *Id.* (emphasis in original).

Harrison has identified no evidence that the reason Diamond Pharmacy did not refill his prescription was because it intended to cause him emotional distress. Nor has he even alleged as much. *Cf. Stigall v. Louisville Jefferson County Metro Gov't*, No. 3:18-cv-168, 2018 WL 4775506, at *6 (W.D. Ky. Oct. 3, 2018) ("Plaintiff's claim cannot survive because she does not allege that the Officer Defendants' actions were solely intended to cause extreme emotional distress.") (quotations omitted). And he hasn't identified any evidence indicating that Diamond Pharmacy recklessly caused him emotional distress. *See Childers*, 367 S.W.3d at 580; *see also id.* at 581 (A plaintiff "cannot prevail on both a negligence claim and an intentional infliction of emotional distress claim on the same set of facts.").

All Harrison says is that Diamond Pharmacy refused to refill his inhaler in 2019 and 2020, so its refusal to refill his inhaler in 2021 must have been a "form of harassment." DN 36 at 9. He contends, in conclusory fashion, that Diamond Pharmacy "knew and/or should have reasonab[ly] known that [its refusal to refill his inhaler] would result in sever[e] emotional distress," DN 43 at 3. But Harrison does not support these statements with evidence, and they fail to establish intentionality or recklessness in any event. They do not show that Diamond Pharmacy refused to refill Harrison's inhaler to cause him emotional distress or should have known that the refusal would cause him emotional distress rather than physical injury. *See Childers*, 367 S.W.3d at 580.

And if that weren't enough, the Kentucky Supreme Court has made clear that while a plaintiff can plead in the alternative, "a plaintiff cannot maintain" an intentional-infliction-of-emotional-distress claim when the facts support a traditional negligence claim. *Id.* at 581, 583–84. Harrison's claims plainly sound in negligence rather than intentional infliction of emotional distress, particularly given the record as it currently stands.

So Harrison's claim for intentional infliction of emotional distress fails as a matter of law and the Court grants summary judgment to Diamond Pharmacy on this claim.

**Expert Testimony**.  All that remains is Harrison's negligence claim arising out of Diamond Pharmacy's refusal to refill his inhaler in January 2021.  Diamond Pharmacy argues that it is entitled to summary judgment on this claim because Harrison lacks expert testimony supporting causation and breach.  Diamond Pharmacy MSJ at 8–10.

Negligence claims, of course, have four elements:  duty, breach, injury, and causation.  *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012).  "Kentucky courts generally require patients to introduce expert medical evidence to establish the breach and causation elements of … negligence claims" involving medical providers.  *Phillips v. Tangilag*, 14 F.4th 524, 540 (6th Cir. 2021); *see also Sandler v. United States*, No. 11-cv-206, 2013 WL 5468493, at *6 (E.D. Ky. Sept. 30, 2013) ("[E]xpert testimony is generally required to show that a medical provider failed to conform to the applicable standard of care, and thus caused the injury of which Plaintiff complains.").[3]  This decision, however, lies "squarely within the trial court's discretion."  *Brown v. Griffin*, 505 S.W.3d 777, 782 (Ky. Ct. App. 2016) (citing *Keene v. Commonwealth*, 516 S.W.2d 852, 855 (Ky. 1974)).

Harrison concedes that he has not retained or otherwise identified an expert to testify on his behalf.  Plaintiff's Response to Defendant's First Requests for Production (DN 28-2) at 1–2.  This failure, Diamond Pharmacy reasons, dooms Harrison's negligence claim.  Diamond Pharmacy MSJ at 8–10.  After all, courts routinely grant summary judgment to defendants because a plaintiff has failed to provide expert testimony supporting a malpractice claim.  *See, e.g., Ashland Hospital Corp. v. Lewis*, 581 S.W.3d 572, 578–81 (Ky. 2019); *Phillips*, 14 F.4th at 540–41.

Routinely, but not automatically.  Kentucky Courts recognize two narrow exceptions to the expert-testimony requirement.  *See Phillips*, 14 F.4th at 540.  First, res ipsa loquitor: "a patient does not need expert testimony about the standard of care if an ordinary person could conclude that a certain result would not happen if the doctor had performed with the proper skill."  *Id.*  Second, the party-admission exception: "a patient does not need expert testimony if a doctor's own admissions

---

[3] Neither party address whether Harrison's claim should be treated as a standard negligence claim or a medical-malpractice claim.  As to the statute of limitations, this appears to be a distinction without a difference: medical-malpractice and negligence claims both have a one-year statute-of-limitations. Ky. Rev. Stat. § 413.140(1)(e).  The two claims do have accrual rules that differ in some respects.  *Compare* Ky. Rev. Stat. § 413.140(1)(2), *with Hall*, 583 F.3d at 933.  But in this case the accrual date is the same under either rule.  Going forward the parties may wish to consider whether the distinction between these torts affects the type of evidence required to prove or defend Harrison's suit.

would permit a jury to find both that the doctor violated the standard of care and that this malpractice caused the injury." *Id.* Charitably read, Harrison's briefs invoke both exceptions. DN 43 at 2; DN 36 at 12–13.

Viewing the record in Harrison's favor, as the Court must, he may not need expert testimony on his medical-negligence claim. Based on the record before the Court, a jury might reasonably conclude from Diamond Pharmacy's admissions and the documentary evidence that Diamond Pharmacy unreasonably harmed Harrison by waiting seven weeks to refill his 30-day prescription.

**a.** Start with Harrison's allegation that Diamond Pharmacy breached the standard of care. In responding to Harrison's interrogatories, Diamond Pharmacy stated that it refilled Harrison's prescriptions "in a timely manner." DN 39-1 at 28. It also admitted that "a prescription for 30 doses of a medication taken once daily for 30 consecutive days will need to be refilled on or before day 31 to prevent a missing dose if there is no other medication available." *Id.* Collectively, these admissions could allow a jury to reasonably conclude that to comply with the standard of care for "timely" refill a pharmacist must fill prescriptions with a frequency that doesn't cause a patient to miss a dose.

With respect to Harrison's specific medication, Diamond Pharmacy admitted that Harrison's inhaler only comes in 30-dose or 14-dose containers. *Id.* at 32. And it "generally" admitted "that 30 doses of medication taken once daily for 30 days will not last 60 days." *Id.* at 14. But Harrison's prescription directed him to take "1 puff inhalation every morning." DN 44-1 at 7. The prescription lasted from December 9, 2020 to June 6, 2021. If the maximum dispensation is 30 doses, that means Harrison would need a refill every 30 days to maintain this daily regimen. *Id.* Certainly Diamond Pharmacy points to nothing to the contrary.

Yet a handwritten note on Harrison's prescription states that it was "filled" on December 9, 2020 and January 27, 2021—and (implicitly) not in between. *Id.* Diamond Pharmacy's records confirm this. They show that it refilled prescriptions for Harrison's inhaler on those same dates: December 9, 2020 and January 27, 2021. DN 44–1 at 8, 11. Shipping records provide further corroboration: the prison received these refills on December 10, 2020 and January 28, 2021. DN 44-1 at 9, 12. Together, this documentary evidence indicates that 7 weeks lapsed between refills that were due about every 4 weeks. Diamond Pharmacy's records further show that in this seven-week interval, it received five requests (on January 6, 12, 15, 19, 21) to refill Harrison's inhaler, yet denied each of them as being "too soon." *Id.* at 24–28.

Viewed most favorably to Harrison, this evidence could support a reasonable jury finding that Diamond Pharmacy breached the standard of care. Its records indicate it knew of the shortfall described above, yet waited until more than 30 days had elapsed since Harrison's last refill. Diamond Pharmacy nevertheless repeatedly

refused to refill his prescription, despite numerous requests to do so. A reasonable jury could conclude from these admissions and the documentary evidence that Diamond Pharmacy's failure to refill Harrison's prescription breached the standard of care. And it would not necessarily need to hear from an expert to reach that conclusion. *See Phillips*, 14 F.4th at 540.

**b.** What about causation? Given the evidence before the Court, an "ordinary person" could deem it obvious that a breach by Diamond caused the respiratory distress Harrison complains of. *Philips*, 14 F.4th at 540.[4] His theory isn't hard to follow: an individual with COPD, who is prescribed an inhaler, suffered harm when his pharmacy repeatedly refused to refill that prescription, thereby preventing him from using the inhaler as directed. Absent a risk of adverse medical effects along these lines, why would the patient have received the prescription in the first place? Critically, Diamond offers no evidence to the contrary.

Again, this demonstrates that Harrison is not necessarily required to have an expert testify on his behalf—at least not based on the limited record materials the parties have identified at summary judgment. *See, e.g., Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965) (expert testimony not required to show doctor negligently failed to order pregnancy test or x-rays before diagnosing and operating on suspected uterine tumor); *Perkins v. Hausladen*, 828 S.W.2d 652, 653, 655 (Ky. 1992) ("This is a case where 'the necessary expert testimony' may be found in the 'admissions by the defendant doctor'" that he nicked a blood vessel during surgery). When viewed most favorably to Harrison, Diamond Pharmacy's own admissions, refill records, and shipping records could reasonably establish not only the standard of care, but also that its breach caused Harrison to suffer damages. Again, the absence of any evidence to the contrary is significant. So the Court denies Diamond Pharmacy's motion for summary judgment with respect to this element as well.

**Harrison's cross-motion for summary judgment.** But does that mean Harrison is entitled to summary judgment on his negligence claim? *See* Harrison MSJs (DNs 36, 39, 43). Despite Harrison's cogent arguments (all the more impressive because he drafted them pro se from prison), the record when viewed in the pharmacy's favor wouldn't *require* a reasonable jury to find in Harrison's favor. Diamond Pharmacy's records state that the "ORG QTY" and "SHIP QTY" for Harrison's December refill are "60." DN 44-1 at 8. Viewed most favorably to Diamond

---

[4] What evidence would support Harrison's asserted injury remains unclear. Given the nature of the parties' summary-judgment arguments, neither has identified any record evidence on this required element. Harrison simply states in his briefing that he suffered "respiratory distress, pain and suffering from exacerbation and/or [suffocation] and fearing death and/or a deadly situation," but does not provide any evidentiary support for this statement. DN 43 at 2. Diamond Pharmacy, for its part, seems to accept this statement as evidence of Harrison's damages. See DN 44 at 8 (quoting this statement).

Pharmacy, this would suggest that it could have provided Harrison with *two* inhalers for a total of 60 doses, more than enough to last him from December 9, 2020 to January 27, 2021.

Other evidence in the record, however, cuts against this reading. Harrison asserts his inhaler contains 60 blisters, which equals 30 doses, because each dose uses two blisters.[5] *See, e.g.,* Complaint at 2. Diamond Pharmacy does not dispute this point. So the "QTY" of "60" could refer to the blisters, rather than the doses. The five refill requests submitted to Diamond Pharmacy between January 6 and 21 lend support to this reading. DN 44-1 at 23–28. The first request, on January 6, came 28 days after Diamond Pharmacy last filled Harrison's inhaler. Recall that Diamond Pharmacy admitted both that each inhaler contains a maximum of 30 doses and that "a prescription for 30 doses of a medication taken once daily for 30 consecutive days will need to be refilled on or before day 31." DN 39-1 at 22, 32. A jury could infer from this that Harrison received only one inhaler, that the first refill request arrived shortly before the inhaler ran out, and that the remaining four refill requests were placed (and denied) despite Harrison running out of medication.

But that is not the *only* possible conclusion—even though Diamond Pharmacy has not provided an affidavit, or any other evidence, interpreting or explaining its medical records. And at summary judgment, the Court cannot weigh the evidence and decide which of these competing possibilities occurred. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Because of this significant dispute of fact, neither party is entitled to summary judgment on the negligence claim.

**Failure to comply with scheduling order.** In a final effort to avoid trial, Diamond Pharmacy urges the Court to dismiss Harrison's suit under Federal Rule of Civil Procedure 41(b) for failure to comply with the Court's earlier scheduling order. Diamond Pharmacy's MSJ at 15. The Court ordered Harrison to file a pretrial memorandum by September 11, 2022. Revised Scheduling Order (DN 27) at 1. He did not. Nearly two months later, however, he filed a motion for partial summary judgment. DN 36 (Nov. 7, 2022). Diamond Pharmacy, observing that pro se litigants are held to the same standards as counseled parties when considering their compliance with ordinary procedural deadlines, argues that Harrison's suit should be

---

[5] Diamond Pharmacy's responses to Harrison's interrogatories refer to a "Trelegy FDA package insert." DN 39-1 at 32, 36, 37. While this insert is not included with the parties' summary judgment materials, it appears to be available through the FDA's website. *See* FDA Online Label Repository, available at https://labels.fda.gov/ ("Proprietary Name Search" → "Trelegy" → first result). The online government documentation, which appears appropriate for judicial notice, explains that each dose of Trelegy is a combination of several medications contained in two foil blister strips.

dismissed as a result.  Diamond Pharmacy's MSJ at 15 (citing Federal Rule of Civil Procedure 41(b)).

Rule 41(b) states that "[i]f the plaintiff fails to … comply with … a court order, a defendant may move to dismiss the action." FED. R. CIV. P. 41(b).[6]  When deciding whether to dismiss a case under Rule 41(b), a court should consider:  "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999).

Dismissal is not warranted here.  As a threshold matter, the judge previously assigned to this case implicitly rejected the pharmacy's argument.  That judge issued an opinion (DN 42) calling for additional briefing in January 2023—after Diamond Pharmacy had already filed its motion for summary judgment, in part on this basis.  Rather than granting the request to dismiss this pro se suit based on a missed deadline, the Court outlined Harrison's explanation for the failure and concluded that additional briefing was warranted.  DN 42 at 3—8.

But even considering Diamond Pharmacy's argument anew, dismissal is not warranted.  Harrison's failure to comply with the earlier scheduling deadline was not "due to willfulness, bad faith, or fault."  He explained that he could not file a pretrial memorandum because he had been placed in segregation, depriving him of access to his files.  DN 36 at 1; Memorandum Opinion and Order (DN 42) at 3, 5, 6 (acknowledging that Harrison had been in segregation, without access to his files, and initially received a DVD from Diamond Pharmacy that had no files on it).  He also explained that Diamond's defective DVD hindered his access to medical records. *See* DN 36 at 10; DN 42 at 4–5.  Nor has Diamond Pharmacy identified any tangible prejudice it suffered by Harrison's delay.  The boilerplate assertion that the delay "deprive[d] [it] of its rights as a litigant" is plainly insufficient.  Diamond Pharmacy's MSJ at 15.  And while the Court's original scheduling order did warn Harrison that noncompliance could result in dismissal, DN 20 at 3, that is not dispositive.  Finally, Harrison has complied with the Court's most recent deadline: he timely filed his additional brief consistent with the deadline set out in this Court's most recent

---

[6] Federal Rule of Civil Procedure 41(b) provides in full:

> INVOLUNTARY DISMISSAL; EFFECT. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule— except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

opinion calling for additional briefing.  *See* DN 42 at 8; DN 43.  All things considered, the Court declines to dismiss Harrison's remaining claim for failure to comply with its earlier scheduling order.

## ORDER

The Court grants in part and denies in part Diamond Pharmacy's motion for summary judgment (DN 28).  Diamond Pharmacy is entitled to summary judgment on Harrison's claims for intentional infliction of emotional distress and negligence for conduct occurring in 2019 and 2020.  But neither Diamond Pharmacy nor Harrison is entitled to summary judgment on Harrison's 2021 negligence claim.  So the Court denies Harrison's motion for partial summary judgment (DN 36).

The Court orders Harrison to file a pretrial memorandum setting forth in detail all facts upon which he bases his 2021 negligence claim against each defendant within 30 days.  Upon filing that memorandum, Diamond Pharmacy shall have 30 days to file its own pretrial memorandum.  The Court also invites each party to address whether appointment of pro bono trial counsel is appropriate given the pretrial deadlines, mediation, and trial that may follow as a result of this order.  The Court won't set a trial date and pretrial deadlines until receiving the parties' pretrial memoranda.

Benjamin Beaton, District Judge
United States District Court

September 27, 2023

9