## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

JAMES HARRISON                                                    PLAINTIFF

v.                                                    NO. 4:21-CV-63-BJB

DIAMOND PHARMACY SERVICES, ET AL.                                DEFENDANTS

* * * * *

### OPINION & ORDER

### I.

What, if anything, constrains a trial judge's authority to appoint counsel for an indigent pro se plaintiff heading toward a trial? Nothing in the Constitution expressly affords indigent civil litigants a *right* to court-appointed counsel. *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993). Congress, however, has provided that judges may, in appropriate cases, ask pro bono counsel to represent them. *Id.* at 604. "The court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1).

Exercising this discretionary authority, judges within the Sixth Circuit have appointed counsel to represent pro se litigants in cases involving allegations of, for example, medical negligence and deliberate indifference.[1] And the Sixth Circuit has not—at least not in any decision cited by the parties or identified by this Court— reversed a district judge's decision to appoint counsel under § 1915(e)(1). Instead, the Court of Appeals has recognized that "[t]he appointment of counsel to civil litigants is a decision left to the sound discretion of the district court." *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992). Given that, the appellate court reviews decisions to appoint counsel for abuse of discretion. *Id.*

Pro se plaintiff James Harrison, an inmate, has asked the Court for such an appointment in his negligence case against Diamond Pharmacy Services. *See* DN 49. Diamond opposes appointment based on language from several Sixth Circuit opinions stating that appointment of counsel "is justified only by exceptional circumstances."

---

[1] *See, e.g., Gray v. United States*, 556 F. Supp. 3d 832, 866 (W.D. Tenn. 2021) ("appointment of counsel is warranted here [because] [d]eliberate indifference and medical negligence cases are often complex"); *White v. Jindal*, No. 13-cv-15073, 2015 WL 181670, at *8 (E.D. Mich. Jan. 14, 2015) (granting motion to appoint counsel based on "discovery requests [that] raise a delicate issue that pits security concerns against Plaintiff's right to discoverable information under the Federal Rules"); *Palmer v. Allen*, No. 14-cv-12247, 2014 WL 5782792, at *3 (E.D. Mich. Nov. 6, 2014) (finding "an exceptional set of circumstances that warrants appointment of counsel"—based in part on assertion of "several Constitutional and common law claims").

*See Lavado*, 992 F.2d at 606; *Bryant v. McDonough*, 72 F.4th 149, 152 (6th Cir. 2023) (quoting *Lavado*).   These decisions, however, address (and affirm) the *denial* of counsel to indigent civil litigants; they do not confront whether and when a district judge's decision to appoint counsel might fall outside the discretion granted by Congress. *See Lavado*, 992 F.2d at 605–06 (affirming district court decision to deny request for counsel); *Bryant*, 72 F.4th at 152 (same); *Alexander v. Meckstroth*, 52 F. App'x 719, 720 (6th Cir. 2002) (same). So the passages quoted by defense counsel do not squarely support the proposition that a court may *not* appoint counsel absent exceptional circumstances. Nor do these precedents discuss the statutory language, which is unqualified: "The court *may* request an attorney to represent *any* person unable to afford counsel." § 1915(e)(1) (emphasis added). No textual or precedential basis, therefore, exists to support Diamond Pharmacy's attempt to stretch these words beyond their context to reach the appointment rather than denial of counsel.

None of these decisions, moreover, addressed whether or why a judge might abuse his discretion by simply inviting pro bono counsel to *volunteer* to represent an indigent litigant. Section 1915(e)(1), after all, "does not authorize the federal courts to make coercive appointments of counsel." *Mallard v. U.S. Dist. Ct. for S.D. of Iowa*, 490 U.S. 296, 310 (1989) (interpreting an earlier version of the statute). If no lawyer raises her hand at the judge's invitation, then the indigent litigant presumably would remain pro se. And if a lawyer enters an appearance independent of a judge's invitation, then the litigant would no longer proceed pro se. The trial judge's decision to "request" representation, in other words, is neither necessary nor sufficient to secure counsel for an unrepresented litigant.[2]

Even with respect to denials of counsel, the exceptional-circumstances standard's precedential chain of title remains cloudy. The Sixth Circuit's decision in *Lavado* merely cited an earlier Fifth Circuit precedent, which itself provided no analysis. 992 F.2d at 606 (citing *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982)). The relevant line of Fifth Circuit authority appears to have initially reacted to pragmatic concerns—in the context of 42 U.S.C. § 1983 rather than 28 U.S.C. § 1915—regarding the impracticality of appointing counsel for each and every indigent prisoner who asked. "[T]he burdens imposed upon the federal judicial system by the increasing volume of prisoner litigation," Judge Wisdom observed, were particularly pronounced given that "generally speaking no right to counsel exists in § 1983 cases." *Hardwick v. Ault*, 517 F.2d 295, 298 (5th Cir. 1975) (considering when pro se prisoners must exhaust administrative remedies).

Seven years later, however, the Fifth Circuit—in a per curiam order responding to a different set of practical concerns—announced that the "exceptional circumstances" standard "provides the proper test" for deciding whether to appoint

---

[2] The Fifth Circuit, however, has held that "federal courts have inherent power to order counsel to accept an uncompensated appointment" in "limited factual circumstances." *Naranjo v. Thompson*, 809 F.3d 793, 795 (5th Cir. 2015); *see also Mallard*, 490 U.S. at 310 (reserving this question).

counsel. *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The *Branch* ruling traced its exceptional-circumstances requirement to *Hardwick*'s dictum that "generally speaking" civil plaintiffs lack a guaranteed right to counsel. If they don't *always* lack it, the panel inferred, then sometimes they *must* have it. *Id.* (citing *Wright v. Dallas County Sheriff Dept.,* 660 F.2d 623, 625–26 (5th Cir. 1981); *Knighton v. Watkins,* 616 F.2d 795, 799 (5th Cir. 1980)). What positive law supplies such a right? *Wright* had declined to say, instead remanding for the district court to consider afresh whether "decisions in [the courts of appeals] at least open the possibility that in some circumstances plaintiffs in § 1983 cases need to have the assistance of counsel." 660 F.2d at 626. *Wright* didn't address § 1915 at all, though it did give considerable attention to several practical considerations not obviously tethered to the statute. 660 F.2d at 625 (speculating why the trial judge might've dismissed complaint without appointing counsel).

From decisions such as these emerged a rule, of sorts, that taken literally makes the appointment of counsel appropriate if *and only if* "exceptional circumstances exist." *E.g.*, *Lopez*, 692 F.2d at 17 (5th Cir. 1982) ("[T]he appointment of counsel in a civil case … should be allowed in civil actions only in exceptional circumstances."); *Tate v. Hamilton Cnty Election Comm'n*, No. 22-5288/5340, 2023 WL 2910810, at *2 (6th Cir. April 10, 2023) ("[R]elief under § 1915(e)(1) is warranted only under exceptional circumstances") (citing *Lavado*)). These cases, as noted, tended to address pro se appellate challenges to trial-court decisions not to appoint counsel. But their language wasn't always so limited. *E.g.*, *Sanders v. Macauley*, No. 22-1502, 2022 WL 16729580, at *5 (6th Cir. Aug. 10, 2022) ("Indigent parties do not have a constitutional right to counsel in civil cases, and appointment of counsel is warranted only in exceptional circumstances.") (citing *Lavado*).[3] And the practical considerations that the Fifth Circuit originally verbalized in support of *appointing* counsel obviously lie far afield from any pragmatic reasons that might support *denying* appointed counsel. In any event, such pragmatic reasoning regarding the judges' exercise of delegated discretion hardly bears on Diamond's much stronger position that judges typically lack such discretion in the first place. The existence of discretion implies the presence, rather than absence, of authority. The doctrinal roots of a special-circumstances requirement—particularly one that applies across the board, to grants and denials of counsel alike—are therefore shallow at best.

The language of the statute, for its part, doesn't appear to cabin that authority in *either* direction. Linguistically, the phrase "may request" in § 1915(e)(1) is equally hard to square with "may not request unless…," on the one hand, and "must order if…," on the other. Congress' use of "may," the Supreme Court has held in a related

---

[3] *Cf. United States v. 30.64 Acres of Land, More or Less, Situated in Klickitat County*, 795 F.2d 796, 800 (9th Cir. 1986) ("[T]he district court is given considerable discretion in determining whether counsel is necessary, so appellate reversal of trial court denials is also rare. As a result, courts at both levels often have little incentive to choose their language carefully in ruling on section 1915(d) motions….") (distinguishing orders "appointing" and "requesting" counsel).

context, gives prison administrators "the authority, but not the duty" to exercise their discretion. *Lopez v. Davis*, 531 U.S. 230, 241 (2001) (interpreting 18 U.S.C. § 3162(e)(2)(B)). Again, this sits uneasily alongside the Fifth Circuit's ruling in *Branch*, for example, that the district court abused "its considerable discretion" in adjudicating a request for counsel by declining to consider whether exceptional circumstances were present. 686 F.2d at 267 (not addressing § 1915). The Fifth Circuit's decision in *Knighton*, though cited by the Fifth Circuit for the converse proposition, actually rejected on textualist grounds the very argument that Diamond offers today: "The explicit provisions of 28 U.S.C. § 1915(d)"—now codified at § 1915(e)—"refute the state's contention that the magistrate abused his discretion in appointing counsel initially." 616 F.2d at 799.

Indeed, if any limitation constrains the open-ended authority Congress gave district judges to appoint counsel, it surely arises from a constitutional rather than statutory source. Hence the Sixth Circuit's decision, a year before *Lavado*, that "[t]he appointment of counsel to civil litigants is a decision left to the sound discretion of the district court [that] will be overturned only when the denial of counsel results in fundamental unfairness impinging on *due process rights*." *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992) (emphasis added and quotation marks omitted).

Note that *Reneer* tied due-process constraints to the denial rather than appointment of counsel. Some courts have followed suit—cabining the "exceptional circumstances" standard of review to only denials, rather than grants, of requests for counsel. The exceptional-circumstances language, they appear to recognize, is simply a shorthand way to acknowledge "the deferential standard of review, i.e., that a court of appeals will reverse a district court's exercise of discretion *against* appointment of counsel only in exceptional circumstances." *Tabron v. Grace*, 6 F.3d 147, 155 n.4 (3d Cir. 1993) (emphasis added).

The Sixth Circuit, as noted above, doesn't appear to have addressed the question when, if ever, a district judge might abuse its discretion by appointing counsel. And simply assuming that an exceptional-circumstances requirement must apply equally in either direction—no matter how a judge answers a question—is a legal as well as a logical fallacy. The quantum of support necessary to deny a motion isn't always or even often equivalent to the quantum necessary to grant. It would make no sense, for example, if clear and convincing evidence were necessary to either grant or deny a punitive-damages instruction, or if probity had to substantially outweigh prejudice to admit evidence under Rule 403. A narrower reading of the caselaw—to require appointment in case of exceptional circumstances, but not to preclude appointment in the absence of exceptional circumstances—avoids these difficulties and is consistent with the statutory text and the holdings of the Sixth Circuit. Under this better interpretation of § 1915, the caselaw Diamond Pharmacy relies on doesn't limit this Court's authority to grant Harrison's request.

4

## II.

Even so, a considerable body of caselaw has developed addressing when exceptional circumstances do and don't warrant the appointment of counsel. That caselaw indicates that appointment in a case like this lies squarely within a trial court's discretion: although many of Diamond's points regarding the apparent simplicity of this case are well taken, and might well justify denying Harrison's request, other aspects are not so straightforward and suggest that appointment would hardly amount to an abuse of discretion under § 1915(e). And considering this case in its current posture, enough exceptional circumstances warrant Harrison's request. So the Court would grant Harrison's motion under the exceptional-circumstances rule regardless of the correctness of Diamond's broad reading of circuit precedent to apply it to grants as well as denials of counsel.

Diamond argues that appointment is unwarranted for two reasons: Harrison has demonstrated that he can represent himself and this case is straightforward.

When deciding whether exceptional circumstances are present in challenges to appointment denials, Sixth Circuit caselaw considers two factors: "the abilities of the plaintiff to represent himself" and "the type of case." *Lavado*, 992 F.2d at 606. "This generally involves a determination of the complexity of the factual and legal issues involved." *Id.* (internal quotation marks omitted). The Sixth Circuit has also noted, in dicta, that district courts "should at least consider plaintiff's financial resources, the efforts of plaintiff to obtain counsel, and whether plaintiff's claim appears to have any merit." *Henry v. City of Detroit Manpower Dept.*, 763 F.2d 757, 760 (6th Cir. 1985). Other courts have held that exceptional circumstances turn in part on "whether the appointment of counsel would be a service to … the court and defendant as well, by sharpening the issues in the case, shaping the examination of witnesses, and thus shortening the trial and assisting in a just determination." *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982). Given these considerations, the Court agrees that "[b]y appointing counsel in cases such as this one, the district court not only insures that the meritorious claims of a civil rights pro se plaintiff are not defeated, but eases the burdens placed both on the district court and on [the appellate] court …." *Stringer v. Rowe*, 616 F.2d 993, 1001 (7th Cir. 1980).

**A. Harrison's ability to represent himself.** While Harrison's untrained self-representation has been admirable during the pleading and motions phases of this case, trial will pose a new set of challenges. Diamond Pharmacy notes that Harrison's "prolific" motion practice "received commendation from this Court." DN 51 at 1. True enough. *See* DN 48 at 6. But trial practice requires "examination of witnesses, introduction of evidence, and the delivery of opening and closing arguments to a jury," all of which demand a different set of skills from motion practice. *Walker v. Price*, 900 F.3d 933, 940 (7th Cir. 2018) (holding district court should've granted motion "to recruit counsel"). As then-Judge Barrett recognized, "pretrial performance d[oes] not necessarily reflect [the] ability to handle a trial." *Id.*

5

at 938 ("assistance of counsel becomes increasingly important as litigation enters its later stages"). While a plaintiff "may have been capable of writing intelligible documents," that task "do[es] not require a quick, oral response in front of a jury." *Id.* at 940; *cf. Lince v. Youngert*, 136 F. App'x 779, 783 (6th Cir. 2005) (affirming denial of counsel after noting that plaintiff "presented numerous witnesses through appropriate direct examination questions," "conducted cross examinations," "us[ed] leading questions," and "even made appropriate evidentiary objections").

This is particularly true here given that Harrison suffers from a hearing impairment and other medical issues. DN 49 at 1. His hearing would almost certainly hinder his ability to "examin[e] witnesses" and provide "a quick oral response in front of a jury." *Walker*, 900 F.3d at 940 (considering how "mental and psychological limitations … would handicap [plaintiff's] performance during the trial, as opposed to the pretrial phase"). The papers before the Court offer every reason to suspect Harrison would struggle to represent himself at trial—even compared to the average indigent pro se prisoner—and certainly no reason to expect he possesses more courtroom skills than his peers.

As Diamond Pharmacy and this Court agree, Harrison's briefing was good for a pro se prisoner, but he ascribes this to help from other inmates.[4] DN 49 at 1; *see id.* at 940–41 (distinguishing briefs filed with assistance from a "jailhouse lawyer" from those filed on plaintiff's own). Even still, these filings suffered from major deficiencies: they are riddled with typos, digress at length regarding disciplinary proceedings irrelevant to this litigation, and assert a farfetched conspiracy between Diamond Pharmacy and the Department of Corrections. And if left uncounseled at trial, Harrison would be on his own. The record before the Court, therefore, indicates that Harrison would struggle to represent himself at trial. This weighs in favor of appointing pro bono counsel.

**B. The type of case**. At first glance, the complexity of this case (or lack thereof) does not favor Harrison. Only one cause of action remains: the negligence claim arising out of Diamond's alleged refusal to refill Harrison's inhaler in January 2021. And, as Diamond Pharmacy emphasizes, the Court has already ruled that at

---

[4] Diamond Pharmacy asserts that Harrison "drafted the motion for pro bono trial counsel without the assistance of legal aides. In this motion, he articulates arguments and cites to the correct statutory and case law." DN 51 at 4. But Diamond Pharmacy's assertion isn't obviously correct. Harrison explained in his motion that the inmates who previously assisted him in preparing his motions have been transferred, so he is "now limited in his ability to present coherent arguments." DN 49 at 1. This statement doesn't necessarily suggest, as Diamond Pharmacy claims, that Harrison prepared this motion himself. It could simply mean that, going forward (and certainly in a courtroom), he will lack the assistance of other inmates.

least one aspect of this case is not complex, insofar as Harrison does not necessarily need expert medical testimony to prevail.  DN 51 at 1.

In response, Harrison argues that "the issues and documented medical records and terminologies within are complex."  DN 49 at 2.  Another district judge in this Circuit recently agreed, appointing counsel in part because "medical negligence cases are often complex."  *Gray v. United States*, 556 F. Supp. 3d 832, 866 (W.D. Tenn. 2021).

What's more, other considerations relevant to "the type of case" cut in favor of appointing counsel.  Most importantly, it appears that Harrison will be an important witness.  Recruiting pro bono counsel so Harrison does not have to play double duty—serving as both advocate and witness—would avoid unnecessary confusion and aid the jury.  *Cf. United States v. Arrington*, 867 F.2d 122, 126 (2d Cir. 1989) ("[T]he problem presented by [the] dual role of attorney and witness is whether such a performance so blurs the line between argument and evidence that the jury's ability to find facts is undermined."); RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS, § 108 cmt. b. ("The combined roles risk confusion on the part of the factfinder and the introduction of both impermissible advocacy from the witness stand and impermissible testimony from counsel table.").  For this reason, other courts have held that exceptional circumstances may be present when "the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination."  *Ulmer*, 691 F.2d at 213.

Harrison also argues that he cannot adequately investigate his case because he has been transferred to a new facility.  The transfer, he says, makes it difficult to contact inmates who provide testimony that would provide evidence of his damages.  DN 49 at 2.  Diamond Pharmacy does not dispute this point, *see* DN 51, and it too weighs in favor of finding exceptional circumstances, *Ulmer*, 691 F.2d at 213.

**C. Other considerations.**  The Sixth Circuit has recognized additional factors—indigency, efforts to obtain counsel, and the merits—also suggesting that recruiting counsel for Harrison is appropriate.  *See Henry*, 763 F.2d at 760.  Harrison is indigent.  He was granted *in forma pauperis* status in state court.  Notice of Removal (DN 1) ¶ 2.[5]  Though the information in the record is limited, Harrison's unrebutted statement that he is "financially unable to purchase postage stamps in a quest to locate an attorney," DN 49 at 1, suggests that his indigency has frustrated his attempts to obtain counsel.  And, as the denial of Diamond Pharmacy's motion for summary judgment demonstrates, *see* DN 48, Harrison's negligence claim "appears to have … merit."  *Henry*, 763 F.2d at 760.

Lastly, appointing counsel "would be a service to … the court and defendant … by sharpening the issues in the case, shaping the examination of witnesses, and thus

---

[5] Diamond Pharmacy removed this case to federal court and paid the filing fee.  *See* DN 1.  So Harrison did not need to seek *in forma pauperis* status under § 1915 in federal court.

7

shortening the trial and assisting in a just determination." *Ulmer*, 691 F.2d at 213. Representation will facilitate communications between the parties and lead to more orthodox and efficient pretrial and trial proceedings.  This undoubtedly serves the interest of justice by limiting the court- and jury-time consumed by this trial that could otherwise be devoted to the balance of the Court's docket and other more productive endeavors.

### III.

The best reading of § 1915(e) and Sixth Circuit precedent, in the Court's estimation, authorizes the Court's decision to appoint counsel regardless of any exceptional circumstances.  Even assuming such a requirement applies, however, the Court concludes, in its "sound discretion," *see Reneer*, 975 F.2d at 261, that exceptional circumstances warrant recruiting pro bono counsel to represent Harrison. Accordingly, the Court grants Harrison's motion and will issue a separate order inviting members of the Court's bar and pro bono panel to volunteer to represent Harrison.[6]

Benjamin Beaton, District Judge

United States District Court

December 15, 2023

---

[6] Because the Court grants Harrison's motion to appoint counsel, his request for surveillance video to support the arguments made in that motion is now moot and the Court denies that request without prejudice.  *See* Reply (DN 53).